# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN MINCEVICH | : | |
|       Plaintiff | : | |
| v. | : | 3:CV-03-1706 |
| | : | (CHIEF JUDGE VANASKIE) |
| BAVARIAN PRETZEL BAKERY | : | |
|       Defendant | : | |

## MEMORANDUM

On October 3, 2003, Plaintiff Joan Mincevich ("Plaintiff" or "Mincevich") filed a complaint against her former employer, Defendant Bavarian Pretzel Bakery ("Bavarian"). Mincevich alleges that her termination by Bavarian violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (2000), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 et seq. (1991). Specifically, Mincevich alleges that Bavarian's performance-based reasons for her discharge, namely low sales volume and child labor law violations, were a pretext for intentional age discrimination. (Pl.'s Br. in Opp. to Summ. J. Mot., Dkt. Entry 28, at 13-16.) Mincevich further alleges that age-related comments made by her superiors at Bavarian constitute direct evidence of age discrimination. (Id. at 16-19.)

Currently pending is Bavarian's motion for summary judgment. (Dkt. Entry 21.) For the reasons stated below, Bavarian's motion will be granted.

## I. BACKGROUND

From May of 1987 to February of 2002, Mincevich worked as the Store Manager for a Bavarian pretzel kiosk in the Stroudsburg Mall, Stroudsburg, Pennsylvania. (Mincevich Dep., Dkt. Entry 30, at 9, 11.) Mincevich was born on January 11, 1941. (Id. at 9.) Al Callucci, Regional Director for Bavarian, terminated Mincevich's employment on February 22, 2002, replacing her with fifty-one (51) year-old Linda Morley, the Assistant Manager. (Callucci St., Dkt. Entry 31, at ¶ 12.) Mincevich was informed that she had been discharged from her Store Manager position because she failed to improve sales volume and failed to correct child labor law violations, particularly during a ninety (90) day probationary period following a November 15, 2001 performance evaluation. (Id. at ¶¶ 14, 16.) Callucci claims that he had no knowledge of and made no reference to anyone's age in relation to Mincevich's discharge. (Id. at ¶¶ 15-16.) Plaintiff admits that Callucci never treated Plaintiff differently because of her age and never made any age-bias comments to Plaintiff or in her presence. (Def.'s Statement of Material Facts ("SMF"), Dkt. Entry 22, at ¶¶ 34-35.)[1]

As stated in Bavarian's Operations Manual, the Store Manager is responsible for "optimizing profits" and "continually building sales volume." (Mincevich Dep., Dkt. Entry 30, at Ex. 13). Over the last few years Mincevich had served as Store Manager, sales at her store

---

[1] Citation to Defendant's Statement of Material Facts signifies that Plaintiff has admitted the assertion.

had been decreasing considerably.  (Id. at Ex. 23, 33, 37.)  On multiple occasions, dating back to 1996, Bavarian management counseled Mincevich about poor sales performance.  (Id.)  A January 1999 performance evaluation of Mincevich indicated that her store's income was seventy-three (73) percent under budget.  (Mincevich Dep., Dkt. Entry 30, at Ex. 33.)  A May 2000 letter to Mincevich pointed out that her store's profit had dropped by 375%, representing the single worst profit decline in the entire company over the previous year.  (Id. at Ex. 37.)  Mincevich admitted in her deposition, as she had in response to past performance appraisals by Bavarian management, that sales for her store were indeed down.  (Id. at 74, Ex. 36.)

     In October of 2001, Regional Manager Callucci conducted a labor audit of Mincevich's store and discovered multiple child labor law violations.  (Callucci St., Dkt. Entry 31, at ¶¶ 4-6.)  Mincevich posted at her store, and admits that she understood the contents of, a Pennsylvania Child Labor Law notice which stated, in part, that employees under the age of eighteen (18) must have on file with their employer an employment certificate issued by their high school and that they must take a thirty-minute meal period after five (5) hours of work.  (Mincevich Dep., Dkt. Entry 30, at 19-20, 25, Ex. 2.)  Through his labor audit, Callucci found that Mincevich had employed a high school student, Christina Sinno, without having her employment certificate on file.  (Callucci St., Dkt. Entry 31, at ¶ 6.)  Sinno worked at the store from May through July of 2001 and again from September of 2001.  (Mincevich Dep., Dkt. Entry 30, at 204-07.)  Callucci

also found that, in September and October of 2001, sixteen (16) year old Ashley Stumpp worked more than eight (8) hours without a break on fourteen (14) instances, while Sinno worked over five (5) hours without a break on (5) occasions. (Callucci St., Dkt. Entry 31, at ¶ 4.)

On November 15, 2001, Callucci met with Mincevich and presented her with a written performance evaluation. (Id. at ¶ 9.) In this evaluation, Callucci expressed "serious concern" about Mincevich's capabilities as Store Manager and indicated that failure to improve might lead to her dismissal. (Mincevich Dep., Dkt. Entry 30, at Ex. 39.) Callucci placed Mincevich on a probationary period of ninety (90) days and directed her to submit by December 1, 2001 an action plan that would address such issues as sales performance and labor law compliance on an "immediate and sustained basis." (Id.) In his meeting with Mincevich, Callucci particularly emphasized the importance of addressing the areas of sales and labor law compliance. (Callucci St. at ¶ 10.)

Mincevich failed to submit an action plan for improvement.[2] (Id. at ¶ 11.) Moreover, Mincevich did not demonstrate any improvement in areas such as sales and profitability during the ninety (90) day probationary period. (Id.). Sinno continued to work without her employment certificate and Stumpp worked over eight hours without a break on two occasions during this period. (Callucci St. at ¶ 11-12.)

---

[2]Mincevich did submit a written reply to Callucci's negative performance appraisal, essentially disputing each of Callucci's criticisms. (Mincevich Dep., Dkt. Entry 30, at 247-48, Ex. 40.)

On February 22, 2002, Callucci fired Mincevich.  (Id. at ¶ 12).  Callucci observed that Mincevich had displayed no sense of urgency in addressing the matters set forth in his November 15, 2001 evaluation.  In this regard, Mincevich took a three (3) week vacation during the probationary period.  (Def.'s SMF, Dkt. Entry 22, at ¶ 22.)  Plaintiff admits that there were violations of work hours restrictions during December, 2001 and January, 2002, and that Sinno worked without proper working papers until January 6, 2002.  (Id. At ¶¶ 20, 22.)

Mincevich reports that, over the course of her employment with Bavarian, two District Managers made comments she perceived to reflect age bias.  On March 26, 1995, seven (7) years before Plaintiff was fired, District Manager Pam Abrams asked Mincevich in front of a group of people whether she was over fifty (50).  (Mincevich Dep., Dkt. Entry 30, at 108-109.)  Some time later, another District Manager, Karen Price, asked Mincevich when she planned on retiring and, on another occasion, told her, "if you don't like it, quit!"  (Id. at 156-158, 163-164.)  These were the only instances of age-related comments made to Mincevich at  Bavarian.  (Id. at 166). Neither Abrams nor Price worked for Bavarian at the time of Mincevich's discharge, as Abrams had left the company in 1997 and Price in the summer of 2001.  (Def. Br. in Supp. of Summ. J. Mot., Dkt. Entry 22, at 23.)  Callucci did not approach either of them in making his decision to terminate Mincevich.  (Callucci St. at ¶ 12).

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir.), cert. denied, 513 U.S. 1022 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 329 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988); Continental Ins. Co. v. Bodie, 682 F.2d 436 (3d Cir. 1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment."

Anderson, 477 U.S. at 256-57.  Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials.  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

B.      **The Age Discrimination Claim**

Mincevich asserts that Bavarian terminated her employment on the basis of her age in violation of the ADEA and PHRA.[3]  The ADEA bans employment discrimination "because of an individual's age," 29 U.S.C. § 623(a)(1), but limits protection to those "who are at least forty years of age." 29 U.S.C. § 631(a).  "This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older."  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996).

The Third Circuit has applied a slightly modified version of the McDonnell Douglas

---

[3]The analytical framework of an action under the PHRA is essentially identical to that of a claim under the ADEA.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); Martel v. Great Bend Borough, 40 F. Supp. 2d 261, 267 (M.D. Pa. 1999).  Accordingly, the analysis of Mincevich's ADEA claim is equally applicable to the claim of age discrimination under the PHRA.

Corp. v. Green, 411 U.S. 792 (1973), burden shifting framework to cases involving age discrimination.  See, e.g., Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)(en banc); Waldron v. SL Indus. Inc., 56 F.3d 491, 494-95 (3d Cir.1995); Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.), cert. denied, 515 U.S. 1159 (1995).  The McDonnell Douglas scheme has three steps.  First, the plaintiff must produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case.  The prima facie elements of a claim for age discrimination under the ADEA require proof that: (1) the plaintiff was a member of a protected class (i.e., was over forty years old); (2) that the plaintiff suffered an adverse employment action such as discharge; (3) that the plaintiff was qualified for the job; and (4) that the position remained vacant and/or was filled by another individual.  See Keller, 130 F.3d at 1108; Grabosky v. Tammac Corp., 127 F. Supp. 2d 610, 622 (M.D. Pa. 2000).[4]

If the plaintiff is able to show a prima facie case of age discrimination, the burden of

---

[4] The purpose of the prima facie case is to require the plaintiff to present evidence "'adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . .'" O'Conner, 517 U.S. at 312.  Thus, the concept of a prima facie case was not intended to be "rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).  "[A] prima facie case cannot be established on a one-size-fits-all basis." Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999).  Of course, merely showing membership in a protected class along with termination of employment for which the plaintiff was qualified is not enough to raise an inference of illegal discrimination.

production shifts to the defendant.[5]  The defendant must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, non-discriminatory reason for the discharge.  If the defendant fails to do so, judgment must be entered for the plaintiff.

If, however, the defendant offers evidence of a legitimate, non-discriminatory reason for the plaintiff's discharge, the burden shifts back to the plaintiff.  To survive summary judgment, the plaintiff must produce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

### 1.     Prima Facie Showing of Age Discrimination

Mincevich has presented sufficient evidence to satisfy all four prongs of a prima facie case.  She was a member of a protected class, as she was sixty-one (61) years old at the time of her discharge.  She was qualified for the job, as she had worked for Bavarian as a Store Manager for fifteen (15) years.  She suffered an adverse employment action, as she was discharged from her position as a Store Manager.  Lastly, the position of Store Manager was filled by a younger person, Ms. Morley.

While Bavarian contends that the ten (10) year age difference between Mincevich and Morley does not warrant an inference of age discrimination, it chooses not to address the prima

---

[5]The burden of persuasion does not shift, but remains with the plaintiff.  See Keller, 130 F.3d at 1108.

facie elements, asserting that it need not do so because Mincevich's pretext argument is fatally deficient. (Def. Br. in Supp. of Summ. J. Mot., Dkt. Entry 22, at 15.)

### 2. Mincevich Has Not Shown "Falsity" or "Pretext"

Bavarian has articulated a legitimate, non-discriminatory reason for terminating Mincevich's employment. Namely, Bavarian asserts that Mincevich was terminated because she failed to improve sales volume and continued to violate child labor laws, particularly during the ninety (90) day probationary period following the November 15 meeting with Callucci. (Def. Br. in Supp. of Summ. J. Mot., Dkt. Entry 22, at 15.)

The burden on Bavarian is merely to produce evidence that such a legitimate reason existed, not to persuade. It is Mincevich's obligation to produce evidence from which a factfinder could reasonably believe either (i) that Bavarian's articulated reasons are false or unworthy of credence; or (ii) that discrimination was more likely than not a motivating or determinative cause of Bavarian's actions. Fuentes, 32 F.3d at 764.

Our Court of Appeals has stated that a plaintiff cannot discredit an employer's proffered reasons by simply showing that the "employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765. Specifically, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that

a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 533 (3d Cir. 1992)); see also id. at 766 (criticisms of the defendants' assertions were "little more than the schoolground retort, 'Not so,' an approach which . . . does not create a material issue of fact."). To demonstrate that a defendant's asserted reason for the adverse employment action was a pretext, the plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

In failing to increase sales and in violating child labor laws, prior to and particularly following the November 15 performance evaluation, Mincevich failed to satisfy important responsibilities of a Store Manager. Failure to successfully fulfill one's job responsibilities is certainly a legitimate ground for termination. Indeed, Mincevich admitted, both in her deposition and upon her superiors' appraisals of her store's poor performance, that sales were low. (Id. at 74, Ex. 36.) Moreover, she acknowledged that there were violations of child labor laws under her management. (Id. at 19-20, 25.) Mincevich nonetheless argues that the low sales volume and child labor law violations were not the real reasons for her termination, and that they are pretexts for the true reason – age discrimination. (Pl.'s Br. in Opp. to Summ. J. Mot., Dkt. Entry 28, at 13-16.)

Mincevich contends that the poor sales record could not be an actual reason for her discharge because it was largely beyond her control. As to the child labor law violations, she

claims that they were not solely her responsibility.  (Id.)

In arguing that low sales performance was not a true factor in her dismissal, Mincevich points to evidence that, on occasion, her store realized substantial increases in income. Specifically, Mincevich notes that between December of 2000 and December of 2001, her store was placed on seven (7) weekly top ten (10) lists, out of eighty (80) stores, for sales percentage increase.  There is no disputing the fact, however, that her store's sales volume had significantly decreased over the last several years of Mincevich's employment.  (Mincevich Dep., Dkt. Entry 30, at 79, 81.)  A temporary increase in sales by percentage would reflect a low starting point, and Plaintiff does not point to evidence that she had reversed the decline in sales.  A plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."  Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).  Mincevich has not done so.

Mincevich attributes low sales volume to a decrease in mall traffic.  (Id. at 74.) Nonetheless, the poor performance of Mincevich's store, which included registering the worst profit decline in the entire company, was significant and understandably of concern to Bavarian. (Id. at Ex. 23, 33, 37, 39.)  Moreover, as Bavarian has pointed out, there is in fact no record evidence of the mall's sales volume between 1999 and 2002.  (Def.'s Rep. Br. in Supp. of Mot. for Summ. J., Dkt. Entry 35, at 9.)  In addition, Mincevich's failure to respond to the November 15 evaluation, on which Bavarian based its termination, demonstrated a lack of urgency and

seriousness expected of a Store Manager. The question, as our Court of Appeals has explained, is not whether Mincevich "could have done better; instead, the relevant question is whether the evidence shows that it was so clear that [Mincevich] could not have done better that [Bavarian] could not have believed otherwise." Keller, 130 F.3d at 1110. Mincevich has produced no evidence to support a conclusion that Bavarian could not have believed that sales performance was within her ability to address.

Furthermore, there is no evidence that younger Store Managers were treated more favorably despite similarly poor sales performances. Thus, there is no basis for concluding that Plaintiff's indisputably poor sales record was a pretext for a decision to fire her based on her age.

There were also ample grounds for finding Mincevich responsible for failing to enforce child labor law requirements. Throughout Sinno's employment, Mincevich knew that Sinno was working without proper documentation. (Mincevich Dep., Dkt. Entry 30, 56-57.) When Mincevich hired Sinno in May of 2001, Sinno submitted working papers that were incomplete. (Id. at 55-56.) While Mincevich returned them to Sinno to have them properly filled out, Sinno worked without submitting her employment certificate until Mincevich fired her on January 6, 2002. (Id. at 56.) In her deposition, Mincevich claims that she asked Sinno for the completed employment certificates "many times over and over again. Every time I worked with her I'd ask her for it." (Id. at 57.) Though Mincevich states that she made a concerted effort to have Sinno

bring in the employment certificate, it does not change the fact that she employed Sinno for several months without having her documents on file.

Mincevich alleges, however, that Bavarian was "complicit" in keeping Sinno employed and argues this to be a "genuine issue of material fact to be decided by a trier of fact."[6] (Pl.'s Br. in Opp. of Summ. J. Mot., Dkt. Entry 28, at 13.) Mincevich asserts in her deposition that while she notified Callucci of Sinno's poor work habits in November of 2001, Callucci instructed her to keep Sinno through Christmas and to then let her go. (Mincevich Dep., Dkt. Entry 30, at 51.) Mincevich does not indicate whether there was any mention of Sinno's employment documentation in this conversation, nor does she indicate whether this conversation took place before or after the November 15 meeting. In any event, Callucci would have been aware of Sinno's employment situation as he had learned of it by October of 2001. (Callucci St., Dkt. Entry 31, at ¶ 6.) It is unclear, then, as to whether Callucci's comments should be interpreted as an implicit approval of employing Sinno without an employment certificate or as a statement made on the assumption that Mincevich would address Sinno's situation. Moreover, its significance would vary greatly depending on whether the comments were made before or after the November 15 meeting. Regardless of what was said or meant in the conversation in

---

[6] Mincevich shoulders the burden of presenting evidence sufficient to support a rational inference that "'each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action.'" Kautz, 412 F.3d at 467 (emphasis in original). Plaintiff's failure to present evidence casting doubt on the poor sales record as a reason for her firing is sufficient to support entry of summary judgment in favor of Bavarian.

question and when it may have taken place, however, Callucci did remind Mincevich in a December 2001 phone conversation to act immediately on Sinno's employment situation. (Id. at ¶ 11.) Taken in the context of the November 15 performance evaluation, Mincevich was plainly responsible for addressing Sinno's situation, particularly after the December phone conversation with Callucci. If Callucci's comments to keep Sinno through Christmas were made after the November 15 meeting and were meant to indicate that Sinno could work without an employment certificate, then Mincevich would not be responsible for having violated child labor laws from then through the December phone conversation. Nonetheless, Mincevich would still be responsible for having employed Sinno without an employment certificate from the December conversation until she fired her in January of 2002. Thus, Callucci's comments to keep Sinno through Christmas are not sufficient to support a reasonable inference that Callucci condoned child labor violations.

Mincevich suggests that the child labor law violation in relation to Sinno could not have been a reason for her discharge because she was not responsible for the rehiring of Sinno in September of 2001, as she was on vacation at the time. (Mincevich Dep., Dkt. Entry 30, at 56.) She alleges that it was instead the responsibility of Callucci and Morley, who hired Sinno, to take care of Sinno's paperwork at the time of her rehiring. (Id.) This assertion is belied by Mincevich's statement that she was constantly reminding Sinno of the certificate every time they worked together. It is also irrelevant as Mincevich acknowledges that Callucci instructed Plaintiff on

15

November 15, 2001 to obtain Sinno's working papers immediately. (Def.'s SMF, Dkt. Entry 22, at ¶ 17.)

There is also no dispute that Mincevich scheduled high school students to work over eight (8) hours a day and more than five (5) hours without a break. Mincevich cites one instance in which Morley was scheduled to replace Stumpp and yet failed to show up. (Id. at 266-267.) Moreover, Mincevich asserts that she was away for some of the alleged violations. (Pl.'s Br. in Opp. of Summ. J. Mot., Dkt. Entry 28, at 14.) Mincevich admits, however, that she too scheduled teenagers to work shifts in violation of child labor restrictions. (Id. at 218.)

Lastly, Mincevich contends in her deposition that Callucci asked her at the November 15 meeting as to whether she felt she was being set up, to which she responded, "absolutely." (Id. at 225.) This perception by Mincevich has no evidentiary significance. See Waldron, 56 F.3d at 498. Even if it had some relevance, Mincevich cannot dispute that she failed to rectify problems identified in the November 15 performance appraisal.

In short, the low sales volume and child labor law violations were legitimate factors in evaluating Mincevich's employment status. Mincevich's failure to address Bavarian's concerns regarding sales volume and child labor law violations raised in the November 15 performance evaluation, coupled with her poor performance prior to the evaluation, are legitimate reasons for termination. Mincevich has not produced evidence that either factor could be considered as "so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

### 3.     Mincevich Has Not Shown "Evidence" Of Discrimination

In addition to the pretext argument, Mincevich asserts that there is direct evidence of age discrimination in the form of age-related comments made to Mincevich by two former District Managers, Abrams and Price. (Pl.'s Br. in Opp. of Summ. J. Mot., Dkt. Entry 28, at 16-19.) Yet, neither Abrams nor Price worked for Bavarian at the time of Mincevich's termination, and Callucci did not consult either of them in deciding to terminate Mincevich. (Callucci St. at ¶ 12). These statements attributed to low-level supervisors years before Plaintiff was fired cannot support a reasonable inference that age played a role in Callucci's decision. See, e.g., Evans v. Pennsylvania Power & Light Co., 98 Fed. Appx. 151, 156 (3d Cir. 2004); Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision").

In order to satisfy the second prong under the Fuentes test, the plaintiff must establish that discrimination was a motivating or determinative factor in the defendant's action. Fuentes, 32 F.3d at 764. Our Court of Appeals has stated that the plaintiff "must point to evidence that proves age discrimination in the same way that critical facts are generally proved–based solely on the natural probative force of the evidence." Keller, 130 F.3d at 1111. Mincevich has not done so. Mincevich has not connected the purported age-related comments to her discharge. There simply is no evidence, direct or circumstantial, that demonstrates that age was a

17

motivating or determinative factor in Bavarian's decision.  Thus, a reasonable factfinder could not find that Mincevich's proof is sufficient to establish by a preponderance of the evidence that age was a motivating or determinative factor in her termination.

### III. CONCLUSION

Our Court of Appeals has stated that mere conclusory allegations are insufficient to withstand a motion for summary judgment.  Schoch, 912 F.2d at 657.  Mincevich has failed to produce evidence beyond mere conclusory allegations that tends to show that Bavarian's asserted legitimate reason for terminating Mincevich's employment lacked credulity or was merely a pretext.  Therefore, summary judgment will be granted to defendant Bavarian on both the ADEA and PHRA claims.  An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN MINCEVICH | : | |
|       Plaintiff | : | |
| v. | : | 3:CV-03-1706 |
| | : | (CHIEF JUDGE VANASKIE) |
| BAVARIAN PRETZEL BAKERY | : | |
|       Defendant | : | |

## ORDER

**NOW, THIS 11th DAY OF OCTOBER, 2005,** for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant Bavarian's Motion for Summary Judgment, (Dkt. Entry 21), is **GRANTED**.

2. The Clerk of Court is directed to enter judgment in favor of Bavarian and to mark this action **CLOSED**.

                                                      s/ Thomas I. Vanaskie
                                                      Thomas I. Vanaskie, Chief Judge
                                                      Middle District of Pennsylvania